892 So.2d 103 (2004)
James TOLBIRD, Plaintiff-Appellee
v.
Allison Belle WYBLE and Trinity Universal Insurance Company, Defendants-Appellants.
No. 38,969-CA.
Court of Appeal of Louisiana, Second Circuit.
December 15, 2004.
Rehearing Applications Denied January 20, 2005.
*105 Nelson, Zentner, Sartor & Snellings, by George M. Snellings, IV, Monroe, for Defendant Appellant Trinity Universal Ins. Co. and Allison Belle Wyble.
Mayer, Smith & Roberts, by Steven E. Soileau, Shreveport, for Defendant Appellant United State Fire Ins. Co.
Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell by Robert Dunkelman, Shreveport, for Intervenor Appellee Great American Ins. Co.
Johnson & Placke by Don H. Johnson, West Monroe, for Plaintiff Appellees James Tolbird and Lisa Tolbird.
Before STEWART, DREW and LOLLEY, JJ.
STEWART, J.
Allison Wyble ("Wyble"), Trinity Universal Insurance Company ("Trinity"), and United States Fire Insurance Company ("U.S. Fire") appeal a Judgment Notwithstanding the Verdict ("JNOV") rendered by the trial court awarding damages to James and Lisa Tolbird. The Tolbirds also appeal citing the inadequacy of various damage awards and the allocation of fault. For the reasons that follow, we reverse the JNOV, reinstate the original jury verdict in part, amend in part, and remand.

FACTS
On May 2, 2001, James Tolbird was working as a meter reader for American Meter Services when he was rear ended in the company truck by Allison Wyble. Tolbird finished his day at work, but shortly thereafter, began to complain of neck pain. He saw Dr. Thomas Dansby on May 3, 2001, who diagnosed him with whiplash or soft tissue injury from the accident. Tolbird's pain continued, and he returned to Dr. Dansby on May 14, 2001, with complaints of muscle spasms, pain, and headaches. Dr. Dansby prescribed medication and physical therapy. Even though Tolbird's condition apparently worsened, Dr. Dansby sent him to work in a light duty capacity on May 18, 2001. On May 22, 2001, Tolbird began treatment with his personal doctor, Dr. Floyd Jones, who is an osteopathic physician. However, because there was no improvement in his condition, Tolbird was next seen by pain management specialist, Dr. Ronald Ellis. He diagnosed Tolbird with whiplash injury syndrome. Dr. Ellis treated Tolbird with narcotic medication and anti-depressants, a series of cervical steroid epidural injections on three occasions, a bilateral occipitalerocal nerve block, a galvanic stimulator, left rhomboid trigger point injections, and a medial branch neurectomy with radio frequency. Dr. Ellis also restricted Tolbird's driving because of the narcotic medication.
*106 In September 2002, the workers' compensation insurer sent Tolbird to Dr. William Whyte, a pain management specialist. Dr. Whyte found objective proof of injury that he deemed significant, namely, the loss of muscle mass in the same region that Tolbird complained of pain. However, he determined that Tolbird could work with certain restrictions.
Tolbird continued treatment with Dr. Ellis throughout 2003. It was Dr. Ellis' opinion that the injuries suffered by Tolbird were permanent. While he was under Dr. Ellis' care, Tolbird became depressed and attempted suicide by overdosing on medication.
A trial ensued concerning the amount of damage suffered by Tolbird as a result of the accident. Prior to the trial, Trinity Universal, which had liability coverage for Wyble, tendered its $50,000 policy limits plus interest into the registry of the court. United States Fire Insurance Company, Wyble's UM carrier, unconditionally tendered the sum of $30,000 prior to the trial. Great American Insurance Company, Tolbird's employer's workers' compensation carrier, intervened in the suit seeking credit for the amounts tendered to Tolbird. The parties stipulated that Great American paid a total of $71,399.91 in benefits to Tolbird. Following the trial, the jury found Wyble 90% at fault and Tolbird 10% at fault. The jury awarded the sum of $73,250.66 in past medical expenses, future medical expenses of $10,000, future lost wages of $5,000 and loss of consortium to Lisa Tolbird in the amount of $5,000 for a total of $93,250.66. The jury apparently regarded the $30,000 tendered by U.S. Fire as representing an award for general damages and did not award any more. However, the trial court granted Tolbird's request for a JNOV increasing the award for loss of consortium from $5,000 to $20,000 and awarding the sum of $120,000 in general damages, limiting those damages to 30 months. This appeal ensued.

DISCUSSION

JNOV
A JNOV is a procedural device authorized by La. C.C.P. art. 1811 whereby the trial court may correct a legally erroneous verdict by modifying fault or damages, or both, that the jury may have assessed. Matthews v. Arkla Lubricants, Inc., 32,121 (La.App.2d Cir.8/18/99), 740 So.2d 787; Greene v. Fox Crossing, Inc., 32,774 (La.App.2d Cir.3/1/00), 754 So.2d 339, writ denied, XXXX-XXXX (La.5/26/00), 762 So.2d 1108. If the opposing evidence is of such quality and weight that reasonable men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. To determine that the evidence was insufficient as a matter of law requires a finding that no valid line of reasoning and permissible inferences could possibly lead rational persons to the conclusions reached by the jury. Matthews, supra. The JNOV should not be granted merely when there is a preponderance of evidence for the mover. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all inferences or factual questions should be resolved in favor of the non-moving party. Anderson v. New Orleans Pub. Serv., Inc., 583 So.2d 829 (La.1991); Craighead v. Preferred Risk Mut. Ins. Co., 33,731 (La.App.2d Cir.8/25/00), 769 So.2d 112, writ denied, 2000-2946 (La.12/15/00), 777 So.2d 1230. As noted by this court in Gibson v. Bossier City General Hosp., 594 So.2d 1332 (La.App. 2d Cir.1991), the scales are clearly tilted in favor of the survival of the jury's verdict, but the trial court is left with a breadth of discretion which varies with the facts and events of each case. What the appellate court reviews is the decision of *107 the trial judge, who has attempted to balance the great deference afforded to the jury's verdict against his obligation to insure that substantial justice was accomplished. Thus, in reviewing the trial court's determination regarding whether to grant a JNOV or new trial, the appellate court's review is limited to whether the trial court committed manifest error in its decision on the motions. Gibson, supra.
Following the jury verdict, the trial judge granted a JNOV and increased the general damage award to James Tolbird from $30,000 to $120,000. He also increased Lisa Tolbird's award for loss of consortium from $5,000 to $20,000. However, we find that the granting of the JNOV was clearly error of law. There is nothing in the record that supports the trial judge's decision to overturn the jury's verdict. The trial judge did not give any reasons for the granting of the JNOV. But our review of the record leads us to the conclusion that the jury's original verdict, as to the issues addressed in the JNOV, was supported by the evidence presented.
Consequently, we reverse and vacate the JNOV and reinstate the jury's original verdict of the sum of $73,250.66 in past medical expenses, $10,000 in future medical expenses, $5,000 in future lost wages, and $5,000 to Lisa Tolbird for loss of consortium. We find no error in the jury verdict as it relates to general damages, loss of consortium, or allocation of fault. However, we find that there are other problems with the original verdict that necessitate an amendment of those awards.

Amendment of Original Jury Award of Damages
The primary reason for the confusion surrounding the award of damages was the trial court's decision to allow the jury to hear evidence of payments by workers' compensation which is prohibited by La. C.E. art. 414 which states,
Evidence of the nature and extent of a worker's compensation claim or of payment of past or future worker's compensation benefits shall not be admissible to a jury, directly or indirectly, in any civil proceeding with respect to a claim for damages relative to the same injury for which worker's compensation benefits are claimed or paid. Such evidence shall be admissible and presented to the judge only.
Each party attempted to use the payment or nonpayment of workers' compensation benefits to buttress their respective claims and only served to confuse the jury as to the proper calculation of damage awards.

Past Medical Expenses
There are several issues raised by each party concerning the various damage awards by the jury. We will first discuss the award for past due medical expenses. At the outset, we note that the bills contained in the exhibit are unnecessarily duplicative and confusing. We also note that the award of $73,250.66 by the jury comes from a figure used by the plaintiffs on a summary presented during closing arguments. The defendants argue that the award must be reduced because there was no evidence that some of the bills existed. This contention centers around a medical summary entered as Plaintiff's Exhibit 1 purportedly listing all of plaintiff's medical expenses and denoting which of those expenses had been paid by workers' compensation. According to that exhibit, the plaintiff had a total of only $60,660.09 in medical expenses. The defendants assert that $14,747.99 of the bills do not exist or are unsupported by the record. Specifically, they refer to the following:

*108
 Amount of Bill Amount Paid by WC
ACT Medical $ 890.11 785.99
Bailey, Myron 280.00 -0-
EMS 388.70 388.70
EMS(suicide related) 342.00 -0-
Monroe Medical Clinic 483.28 483.28
Monroe MRI Center 1,073.00 815.40
Orthopedic Clinic (suicide related) 3,728.00 -0-
P & S Surgery Center 7,466.00 6,788.50
Radiology Associates 96.90 96.90

However, we note that the parties stipulated that the workers' compensation carrier paid $46,468.37 in medical expenses, and there is nothing in the record to dispute plaintiff's claim that the above bills were paid by the workers' compensation carrier. Of the three remaining bills not paid by workers' compensation, the bill from the Orthopedic Clinic in the amount of $3,728 is attached to Plaintiff's Exhibit 1 contrary to the defendants' claim. Thus, we find that of above listed bills, only $622.00 is unsupported by the record, and the medical expenses must be reduced by this amount.
In addition, the defendants contend that there is another $2,816.92 in wrongly listed bills on the exhibit. They assert that the amount listed is different than the amount documented for the following bills:

 Amount claimed Amount documented
Walgreens Pharmacy $ 1,851.71 278.99
Dr. Floyd Jones 440.00 265.00
Wal-Mart Pharmacy 246.14 461.97
Glenwood Regional 20,125.15 18,331.12
La. Pain Mgmt. (Dr. Ellis) 12,871.50 13,380.50

Of the listed bills, the plaintiffs assert that $1,786.71 of the Walgreens bill was paid by workers' compensation, so as mentioned above, we will accept that amount as part of the total stipulated amount of workers' compensation received by the plaintiff. Our review of the extensive medical records contained in the exhibit revealed that the total charges from Dr. Floyd Jones were actually $570.00, which is $130.00 greater than the amount alleged by either side. The defendants further state that the plaintiffs listed the amounts in the bills from Dr. Ellis and the Wal-Mart Pharmacy at numbers less than what was revealed in the exhibits. Specifically, the evidence reveals that there was actually $215.83 more in bills from Wal-Mart than was listed on the exhibit. Likewise, the record shows that there was $509.00 more in medical bills from Dr. Ellis than was listed in the exhibit. The total increase in medical expenses from these two accounts is $724.83. However, the defendants are correct concerning the deficiency in the bill for Glenwood Regional. The correct amount is $18,331.12 resulting in an overage of $1,794.03. The net result of these miscalculations is a decrease in the medical bills in the amount of $939.20. Consequently, the award of medical damages must be reduced by this amount.
We find that the jury award of $73,250.66 is unsupported by the record. Because of the stipulation as to the workers' compensation payments, we know that a minimum of $46,468.37 was incurred by *109 the plaintiff. Obviously, the jury determined that the medical bills incurred as a result of the suicide attempt were related to the injury at issue. We do not find that conclusion manifestly erroneous. We find that the record supports evidence of medical expenses totaling $59,098.89. Thus, we amend the award of medical expenses accordingly.

Future Medical Expenses
Turning now to the award of future medical expenses, we find that the jury was not manifestly erroneous in awarding $10,000.00 in damages. During closing arguments, even counsel for Allison Wyble conceded that it would be acceptable to allow for up to a year and a half for psychiatric treatment for Tolbird's depression and related issues. Moreover, Dr. Torres testified that Tolbird needs about two years of therapy and medication at a cost of $6,500.00. We find no merit to this assignment and affirm this award by the jury.

Past/Future Lost Wages
The jury awarded no money in past lost wages, yet they awarded $5,000.00 in future lost wages. This finding was clearly in error. Each party stipulated that the plaintiff had received $24,931.54 in indemnity benefits for lost wages from workers' compensation. It is then axiomatic that there have been lost wages in the instant case. Dr. Charles Bettinger, a forensic economist, testified that Tolbird had past lost wages in the amount of $46,509.00. However, that figure did not take into account any adjustment for benefits received through workers compensation. Consequently, we will credit Dr. Bettinger's calculations by the amount received under workers' compensation and award the plaintiff $21,577.56 in past lost wages. On the other hand, none of the medical testimony elicited at trial indicated that Tolbird would never be able to return to work. Instead, the testimony supports the fact he would need vocational rehabilitation. There is no abuse of discretion in an award of $5,000.00 under these circumstances.

Insurance Coverage
A secondary issue in this case is whether the workers' compensation carrier, Great American, which is the intervenor in this matter, is entitled to a credit for future damages paid to Tolbird by the UM carrier, U.S. Fire. In supplemental reasons for judgment, the trial court rejected Great American's claims for reimbursement citing Travelers Ins. Co. v. Joseph, 95-0200 (La.6/30/93), 656 So.2d 1000. The UM policy has an exclusion for payment of benefits under workers' compensation and we have held that a workers' compensation carrier cannot recoup benefits paid to a claimant under a UM policy if the policy specifically excludes reimbursement to the insurer. Tommie's Novelty v. Velasco, 37,924 (La.App.2d Cir.2/26/04), 868 So.2d 962.
In second supplemental reasons for judgment, the trial court also denied Great American's claims for credit for future payments made to Tolbird by U.S. Fire. Great American contends that the trial court erred in the calculation of its future credit and/or by denying them a future credit for what Tolbird is to receive from the UM carrier. Great American asserts that it is entitled to a credit under La. R.S. 23:1102(A)(2) which states:
Any dispute between the employer and the employee regarding the calculation of the employer's credit may be filed with the Officer of Workers' Compensation and tried before a Workers' Compensation Judge. If a third party action has been filed in district court, such dispute shall be filed in the district court *110 and tried before the district judge unless the parties agree otherwise.
The parties have stipulated to the amount of the employer's intervention, and we conclude that Great American is entitled to recover that amount, less any reduction for fees under Moody v. Arabie, 498 So.2d 1081 (La.1986) from the tortfeasor and her liability carrier. Moody has been adopted by our legislature and is embodied in La. R.S. 23:1103(C)(1), which states:
C. (1) If either the employer or employee intervenes in the third party suit filed by the other, the intervenor shall only be responsible for a share of the reasonable legal fees and costs incurred by the attorney retained by the plaintiff, which portion shall not exceed one-third of the intervenor's recovery for prejudgment payments or prejudgment damages. The amount of the portion of attorney fees shall be determined by the district court based on the proportionate services of the attorneys which benefited or augmented the recovery from the third party. The employee as intervenor shall not be responsible for the employer's attorney fees attributable to postjudgment damages nor will the employer as intervenor be responsible for the attorney fees attributable to the credit given to the employer under Subsection A of this Section. Costs shall include taxable court costs as well as the fees of experts retained by the plaintiff. The pro rata share of the intervenor's costs shall be based on intervenor's recovery of prejudgment payments or prejudgment damages.
La. R.S. 23:1101 provides that the payment of compensation does not affect an injured employee's right to claim damages from a third person. Furthermore, the right of an employer to recover workers' compensation payments made to an employee injured in a work-related accident caused by a third person is firmly established in our law. Degruise v. Houma Courier Newspaper Corp., XXXX-XXXX (La.App. 1 Cir. 3/28/02), 815 So.2d 1074; Landry v. Martin Mills, Inc., 98-1395 (La.App. 3d Cir.3/3/99), 737 So.2d 58, 60, writ denied, 99-0957 (La.6/4/99), 744 So.2d 625. La. R.S. 23:1101(B) specifically provides for a right in one who has paid compensation benefits to an injured employee to bring suit against the third person, who has caused the injury, to recover any amount which he has paid or becomes obligated to pay as workers' compensation to such employee. Therefore, an employer can recover the amount it has paid in workers' compensation benefits to its injured employee from the third person who is actually responsible for the damages incurred. Landry v. Martin Mills, Inc., 737 So.2d at 60. Because the employer's UM insurer is obligated to repair damage caused by an uninsured or underinsured motorist, an employer's UM insurer is a "third person" legally liable to pay an employee damages resulting from a work-related automobile accident. Johnson v. Fireman's Fund Ins. Co., 425 So.2d 224, 227 (La.1982). Thus, an employer's UM insurer is a "third person" from whom an employer or its workers' compensation insurer can recover reimbursement of benefits paid to the injured employee. Travelers Ins. Co. v. Joseph, 656 So.2d at 1003.
In the event damages are recovered from a third person in a suit filed by either the employee or the employer, the damages shall be apportioned so that the employer's claim for workers' compensation actually paid shall take precedence over that of the injured employee; but if the damages are more than sufficient to reimburse the employer, the excess shall be assessed in favor of the employee. La. R.S. 23:1103(A)(1); Burns v. Apache Corp., 37,396 (La.App.2d Cir.8/20/03), 853 *111 So.2d 708. When this excess is paid to the employee, the employer is entitled to a credit of such an amount against workers' compensation benefits it will become obligated to pay in the future. La. R.S. 23:1103(A)(1); Burns v. Apache Corp, supra. In addition, the employer is entitled to suspend weekly indemnity and medical benefits until such time as the credit is exhausted. Landry v. Martin Mills, Inc., 737 So.2d at 60. In essence, La. R.S. 23:1103(A)(1) precludes double recovery by the injured employee. See Labruzzo v. Employers Ins. of Wausau, 521 So.2d 515, 522 (La.App. 4th Cir.1988), writ denied, 523 So.2d 1342 (La.1988).
Although the trial court was correct in upholding the U.S. fire's policy's exclusion against reimbursement by the workers' compensation carrier, we hold that the trial court incorrectly denied the workers' compensation carrier future credit for payments made by the UM carrier. Accordingly, we reverse the trial court's denial of Great American's request for a future credit for whatever damages may be paid by the UM carrier, and remand this matter to the trial court for a determination of the amount of the credit Great American is to receive minus any fees under Moody v. Arabie, supra.

CONCLUSION
Finding that the trial court erred as a matter of law in granting a JNOV, we reverse the JNOV and render judgment having found Allison Belle Wyble ninety (90%) at fault for causing the accident at issue and James Tolbird ten (10%) at fault for the causing the accident at issue.
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that there be judgment in favor of James and Lisa Tolbird, and against the defendants, Allison Belle Wyble, Trinity Universal Insurance, and U.S. Fire Insurance in the following manner:

 General Damages $ 0
 Allison Tolbird-loss of consortium $ 5,000.00
 Future medical expenses $10,000.00
 Future lost wages $ 5,000.00
 Past medical expenses $59,098.59
 Past lost wages $21,477.46

for a total award of $100,576.05 subject to a 10% decrease because of the fault assigned to the plaintiff, the court awards plaintiffs a total of $90,518.45. Finally, we reverse the court's finding that the intervenor, Great American, is not entitled to a future credit for damages payable under workers' compensation, and remand this matter to the trial court for a determination of the appropriate amount of credit minus fees under La. R.S. 23:1103.
REVERSED IN PART, AMENDED IN PART, AND REMANDED.

APPLICATIONS FOR REHEARING
Before BROWN, STEWART, GASKINS, DREW and LOLLEY, JJ.
Rehearing applications denied.