945 So.2d 272 (2006)
William R. McDANIEL and Nell McDaniel, Plaintiff-Appellants,
v.
Alexander HAMILTON, Kenneth J. Smith, Farm Bureau Insurance Company and XYZ Insurance Co., Defendant-Appellees.
No. 41,588-CA.
Court of Appeal of Louisiana, Second Circuit.
December 13, 2006.
*273 M. Randall Donald, West Monroe, for Appellants.
Cotton, Bolton, Hoychick & Doughty, L.L.P. by David P. Doughty, Rayville, for Appellees.
Before CARAWAY, MOORE and LOLLEY, JJ.
MOORE, J.
Appellants, William R. McDaniel and Nell McDaniel, appeal a judgment awarding general damages of $4,000.00 and $2,000.00 respectively. For the reasons assigned below, the judgment of the trial court is affirmed.

FACTS
William R. McDaniel and Nell McDaniel filed suit in the Sixth Judicial District Court against Alexander Hamilton, his employer, Kenneth J. Smith and Smith's insurer, Farm Bureau Insurance Company, for injuries sustained in an accident on U.S. Highway 65 on August 27, 2003. The McDaniels were traveling southbound on Highway 65 in a 1999 GMC Suburban and towing a travel trailer when an escort vehicle for a mobile home waved them to the side to stop just south of the bridge, in order to allow a mobile home passage over the bridge. The defendant, Mr. Hamilton, was driving a grain truck loaded with corn and traveling in the same direction on Highway 65. Another 18-wheeler had stopped behind the McDaniels. Unable to timely stop his rig, Mr. Hamilton went into the ditch. The grain truck overturned and slid into the rear-end of the McDaniels' travel trailer and knocked both the trailer and the Suburban forward. The trailer was damaged extensively but the Suburban apparently suffered damage only to the hitch. The McDaniels alleged in their petition that they both suffered injuries from the collision.
Prior to trial, the parties stipulated to the liability of Mr. Hamilton and his employer, Mr. Smith, to the limits of the policy issued by Farm Bureau of $100,000.00 per person and $300,000.00 per accident. The parties stipulated to the special damages for Mrs. McDaniel in the amount of $4,680.79, and for Mr. McDaniel in an amount of at least $6,171.78. The only dispute as to special damages was one bill in the amount of $228.00, reflecting a visit by Mr. McDaniel to the Orthopedic Clinic on June 29, 2005, which the defendants contended was unrelated to the accident. The parties also stipulated to the introduction of the accident report and accident scene photographs, the McDaniels' medical records and the deposition of Dr. Robert Louis Gavioli, an orthopedic surgeon, for consideration by the court in its determination of the general damage *274 awards to be made. The matter came for trial on February 1, 2006, where the trial court heard testimony from the McDaniels and Mr. Smith.
The evidence established that Mr. McDaniel was driving and Mrs. McDaniel was a passenger when their Suburban was struck by the tractor trailer. Neither made any complaints of injuries at the scene of the accident. Nevertheless, they were taken by ambulance to the emergency room at the Madison Parish Hospital. The medical records reflect that once there, Nell McDaniel complained of pain in her left shoulder and x-rays were taken of her spine, skull and shoulder. Other than revealing the presence of degenerative disc disease, Mrs. McDaniel's x-rays indicated no fractures or other abnormalities.
One week later, Mrs. McDaniel went to see Dr. Gavioli complaining of pain in her neck and lower back, headaches and blurred vision. He diagnosed a cervical and lumbar strain which aggravated a pre-existing, but asymptomatic, degenerative disc condition. Dr. Gavioli recommended 25 mg per day of Vioxx and physical therapy. Per these recommendations, Mrs. McDaniel attended 10 physical therapy sessions at the Jackson Parish Therapy Center before returning to see Dr. Gavioli on September 29, 2003. His notes indicate that Mrs. McDaniel's injures improved although she still reported some persisting pain in her neck and shoulder. She opted not to take the Vioxx as a result of the side effects and indicated that she would be discontinuing physical therapy and would be doing the exercises on her own. The doctor's notes further indicate his belief that her symptoms should resolve over the next couple of months.
Mrs. McDaniel was 70 years old at the time of the accident. She testified at trial that she did not recall complaining of any injuries at the scene of the accident, but that by the time she arrived at the hospital she was experiencing some pain in her left shoulder. She gave no indication about the degree of the pain she was experiencing or whether it impeded her ability to engage in certain activities. She asserted that her pain had resolved itself by the end of the year. While she testified that her back still hurts sometimes when she does housework, it is unclear from her testimony whether she attributed that pain to the accident. She also stated that she was wearing a lift in her shoe upon the recommendation of the physical therapist because one of her legs was shorter than the other as a result of the accident.
Mr. McDaniel's medical records indicate that when he presented to the emergency room he was complaining of pain in his neck. X-rays were taken of his skull and cervical spine which indicated that while Mr. McDaniel also suffered from some degenerative disc changes, he had no fractures or other abnormalities. He also went to see Dr. Gavioli on September 5, 2003, complaining of headaches and pain in his neck and lower back. The records indicate that Mr. McDaniel was also diagnosed with cervical and lumbar strains which aggravated a pre-existing, but asymptomatic, degenerative disc disease. Dr. Gavioli recommended that Mr. McDaniel also undergo physical therapy and that he take Celebrex.
Mr. McDaniel attended 11 physical therapy sessions before he returned to see Dr. Gavioli on September 29, 2003. Unlike his wife's condition, however, Mr. McDaniel's condition had not improved at the follow-up visit. He reported persisting neck pain and headaches and complained of his right arm falling asleep when he lies on his right side. Mr. McDaniel indicated that he had back surgery approximately 14 years earlier and has had intermittent lower back pain ever since. However, Mr. McDaniel *275 stated that the accident had made the pain worse.
The doctor's physical exam from the September 29th visit indicated an old injury to Mr. McDaniel's right arm. Mr. McDaniel reported he received the injury during "the war." The notes indicate diminished grip strength in Mr. McDaniel's right hand. Mr. McDaniel attributed the diminution to the war injury, but indicated that it had worsened since the accident. Dr. Gavioli prescribed a Medrol Dosepak (cortisone) and recommended a cervical MRI. His notes also indicate the recommendation of a neurosurgical consultation if the headache symptoms persist. Mr. McDaniel next saw Dr. Gavioli on October 14, 2006, after undergoing an MRI. He complained of nausea and trouble sleeping which Dr. Gavioli attributed to the cortisone. Dr. Gavioli's notes indicate the MRI findings of moderate spondylosis with apophyseal osteoarthropathy in the cervical region, mild central stenosis at C4-5 with cord impingement and bilateral foraminal stenosis at C4 to T1 levels and on the left at C3-4. Dr. Gavioli's notes further indicate his conclusion that the accident caused a flare-up of Mr. McDaniel's pre-existing arthritis in his neck, but that he had no acute disc herniation or fracture. Mr. McDaniel declined Dr. Gavioli's recommendation that he see a pain management specialist. In his deposition, Dr. Gavioli confirmed most of the aforementioned findings reflected in his notes. However, he unequivocally stated that the fact Mrs. McDaniel has one leg shorter than the other cannot be attributed to the accident. It is most likely a result of her pre-existing scoliosis (curvature of the spine). As to the conclusion in his notes that Mr. McDaniel's pre-existing degenerative disc condition was asymptomatic before the accident, Dr. Gavioli attested that this was based on Mr. McDaniel's representations to that effect. He further indicated that the soft-tissue injuries suffered by Mr. McDaniel as a result of the accident would most probably have been resolved somewhere between a few weeks and a few months. However, because of Mr. McDaniel's pre-existing and aggravated arthritis, his pain would not necessarily have subsided entirely. Dr. Gavioli also indicated that Mr. McDaniel came back to see him in June of 2005 with increasing neck pain, hand numbness and dizzy spells, but Dr. Gavioli was not inclined to attribute those symptoms to the accident.
Mr. McDaniel was 77 years old at the time of the accident. He testified at trial that he did not experience any pain until he arrived at the hospital on the day of the accident. At that time he reported having pain in the back of his head and in his neck. He was treated and released the same day, but he testified that his neck and shoulder pain and trouble with headaches persisted. He testified about his treatment with Dr. Gavioli and indicated that while he had some improvement with the pain in his neck and shoulder, the pain had not completely subsided even at the time of trial. On direct examination he denied having any history of neck pain, but on cross-examination re-affirmed earlier deposition testimony in which he admitted to having experienced some arthritis-related pain in his neck prior to the accident. He also admitted to having "significant arthritis problems up and down [his] spine for years," although not in his neck. Lastly, he admitted that while working as a truck driver in the early 1990's he had suffered a back injury which required him to undergo surgery. He has been on disability ever since.
After hearing all the evidence, the trial court issued findings that both the McDaniels had suffered soft tissue injuries which aggravated pre-existing arthritic conditions. The court found that the testimony *276 and evidence supported a "generous" award of general damages in the amount of $4,000.00 to Mr. McDaniel and in the amount of $2,000.00 to Mrs. McDaniel. A judgment incorporating the general damage awards and the stipulated special damage awards was signed on March 3, 2006. The instant appeal followed.

DISCUSSION
On appeal, the McDaniels argue that the trial court abused its discretion in its award of general damages. In support of this argument they rely on their combined medical expenses exceeding $10,000.00, Mr. McDaniel's persistent neck pain which he did not have prior to this accident, and Mrs. McDaniel's continued experience with occasional pain when performing housework, as well as her need to wear a shoe lift to compensate for her shorter leg.
General damages are those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms. Keeth v. State, 24,720 (La.App. 2 Cir. 5/5/03), 618 So.2d 1154, writ dismissed, 93-1569 (La.6/18/93), 619 So.2d 563. Much discretion is accorded to the trier of fact in fixing general damage awards. La. C.C. art. 2324.1. This discretion is so vast that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The question before a reviewing court is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. Gladney v. May, 29,373 (La.App. 2 Cir. 5/7/97), 697 So.2d 1022, writ denied, 97-2417 (La.1/9/98), 705 So.2d 1101. To determine if the quantum is inadequate, the appellate court must view the evidence in the light most favorable to the defendant. O'Brien v. Remington Arms Co., 601 So.2d 330 (La.App. 2 Cir.1992), writ denied 604 So.2d 1003 (La.1992). Only after an articulated analysis of the record discloses an abuse of discretion may the appellate court determine that the award is either excessive or insufficient. Reck v. Stevens, 373 So.2d 498 (La.1979); Gladney, supra.
Looking at the specific facts of this case, we find no abuse of discretion. Both the McDaniels did suffer cervical and lumbar strains which aggravated pre-existing degenerative disc and arthritic conditions. They both suffered attendant pain and discomfort, but the record contains no evidence as to the severity of that pain and discomfort. The record also contains little evidence as to the disruptive effect of this pain on the plaintiffs' lives. In that regard, the trial court's ability to observe the demeanor, tone and inflection of the witnesses during their testimony lends added weight to its determination as to the impact of the plaintiffs' injuries and the appropriate general damage award to compensate for that impact.
The record does not unequivocally support the plaintiffs' argument that Mr. McDaniel continues to suffer neck pain as a result of the accident or that Mr. McDaniel was asymptomatic in this regard prior to the accident. Dr. Gavioli stated that his determination that Mr. McDaniel was asymptomatic prior to the accident was based strictly on Mr. McDaniel's representations, which, in point of fact, were somewhat contradicted by Mr. McDaniel on the stand. The trial court stated on the record its belief that Mr. McDaniel did have pre-existing pain but failed to tell Dr. *277 Gavioli of the pre-existing pain because of a high tolerance for pain and his disinclination to complain.
Dr. Gavioli's deposition testimony also indicates that the cause of Mr. McDaniel's complaints of pain and discomfort at the time of trial was not likely the August 2003 accident. While he did not discount the possibility, he indicated that it was more likely a result of his pre-existing conditions and advancing age.
As to Mrs. McDaniel's complaint of experiencing back pain when she performs housework, there is no evidence which would directly attribute that pain to the accident. Also, her argument that the accident has shortened one of her legs, necessitating the need to wear a shoe lift, was directly contradicted by Dr. Gavioli in his deposition. He stated, and this court agrees, that such a condition would not have been caused by the accident and is most likely attributable to her pre-existing scoliosis.
Lastly, despite the McDaniels' contention, there is no necessary correlation between the amount of special damages and the award of general damages.
Although the trial court characterized its general damage awards as "most generous," we conclude that, on the contrary, the general damages awarded under the circumstances of this case are very near the lowest amount that can be reasonably supported by this record and not constitute an abuse of trial court's vast discretion. Accordingly, the general damage award to Mr. McDaniel and Mrs. McDaniel in the amount of $4,000.00 and $2,000.00, respectively, is affirmed.

CONCLUSION
For the reasons stated above, the judgment of the trial court is hereby affirmed. The costs of this appeal are to be borne by the appellants.
AFFIRMED.