981 So.2d 831 (2008)
Tariq MAHMOOD, individually and on behalf of the minor children, Isha Mahmood, Myriam Mahmood and Zanaib Mahmood, and Talat Kousar, Plaintiffs-Appellants
v.
Robert E. CATHEY, Stewart A. Cathey, Sr. and USAA Insurance Company, Defendants-Appellants.
No. 43,148-CA.
Court of Appeal of Louisiana, Second Circuit.
April 30, 2008.
*833 Hudson, Potts & Bernstein, L.L.P. by Robert M. Baldwin, Johnny R. Huckabay, II, Monroe, for Plaintiffs/Appellants, Tariq Mahmood, et al.
Nelson, Zentner, Sartor & Snellings, L.L.C. by Thomas G. Zentner, Jr., Monroe, for Defendants/Appellants, Robert E. Cathey, USAA Ins. Co.
Jones, Odom, Davis & Politz, L.L.C. by John S. Odom, Jr., Shreveport, for Robert E. Cathey & Stewart A. Cathey, Sr.
Before GASKINS, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
The Mahmood family, Tariq Mahmood, his wife, Talat Kousar, and their children, Isha Mahmood, Myriam Mahmood and Zanaid Mahmood, were injured in a car accident involving Defendant Robert E. Cathey, a minor at the time of the accident. Plaintiffs, Tariq Mahmood, individually and on behalf of the minor children, Isha Mahmood, Myriam Mahmood and Zanaid Mahmood, and Talat Kousar, sued Defendants, Robert E. Cathey, and his father, Stewart A. Cathey, Sr., along with their insurance company, USAA Insurance Company. After a jury trial on the issue of damages, Plaintiffs moved for a judgment notwithstanding the verdict seeking an increase in damages for Mr. Mahmood, Ms. Kousar and Isha. The trial court granted a JNOV in favor of Mr. Mahmood and increased his general damage award from $100,000 to $500,000, but denied the motion as it pertained to the other Plaintiffs. Defendants appeal the increase in damages for Mr. Mahmood by the trial court. Plaintiffs appeal the general damages awarded to Isha and Ms. Kousar as abusively low. For the following reasons, we affirm the judgment of the trial court.

FACTS
On November 13, 2004, Robert Cathey crossed the center line of Highway 2 and collided head on with the vehicle being driven by Mr. Mahmood. In Mr. Mahmood's vehicle were his wife, Ms. Kousar, and their three children, Isha, Myriam and Zanaid. Mr. Mahmood's best friend, Mohammed Gulzar, was also in the vehicle and died in the accident.
As a result of the accident, Mr. Mahmood broke both bones in his right forearm, both of which protruded from his skin. He also broke his left femur (the thigh bone) in two places, at the neck of the femur near the hip and in the shaft of the femur closer to his knee. His right ankle was crushed into 30 to 40 pieces and the wound filled with grass and mud while he was being dragged from the wreckage. He was hospitalized for approximately three weeks after the accident. In addition to treating his other injuries, doctors performed various surgeries and treatments in an attempt to repair his right ankle and foot. He also underwent several attempts to clean his ankle wound of pus and debris, which contributed to the ankle becoming infected. After nine months of *834 such attempts, his leg was amputated below the knee. He was again hospitalized for two and a half weeks for the amputation. At time of trial, he had a permanent right leg prosthetic.
Ms. Kousar suffered a lacerated spleen, a bruised lung and a broken left rib as a result of the accident. Her face was scarred from small cuts and scrapes and she was hospitalized for over a week with her injuries. She testified at the trial that her injuries were very painful and that she needed pain killers to sleep due to the continued pain in her neck. As a result of her husband's injuries, in addition to caring for her children and maintaining her home, Ms. Kousar has had to care for her husband and operate the family business, having never previously done so.
Isha is Mr. Mahmood's and Ms. Kousar's youngest daughter and she was three days old at the time of the accident. She suffered a severe head injury requiring her to be transferred by air ambulance from the hospital in Farmerville to LSU Medical Center in Shreveport. She had bleeding and bruising on her brain. She had a series of convulsions and seizures. Isha recovered from her injuries, although Plaintiffs' expert testified that, due to her injuries, it was possible for Isha to continue to have seizures.
The trial court determined on a motion for summary judgment that Defendants were liable. The issue of damages was tried by a jury over a period of three days. The jury awarded Mr. Mahmood $184,244.65 for medical expenses, $100,000 for general damages, $75,000 for disability and $25,000 for loss of consortium. The jury awarded Ms. Kousar $27,945 for medical expenses, $10,000 for general damages and $25,000 for loss of consortium. It awarded Isha $98,617.08 for medical expenses and $15,000 for general damages.
As previously stated, Plaintiffs filed a motion for JNOV arguing that the general damage awards[1] for Mr. Mahmood, Ms. Kousar and Isha were abusively low and sought an increase in each amount. The trial court granted the JNOV for Mr. Mahmood and increased his general damage award to $500,000. Defendants appeal this increase. The trial court denied the motion with respect to Ms. Kousar and Isha. On appeal, Plaintiffs appeal the jury verdict for Ms. Kousar and Isha as abusively low and request this court to increase the awards.

DISCUSSION

Tariq Mahmood
Defendants appeal the trial court's grant of Plaintiffs' motion for JNOV increasing Mr. Mahmood's general damages from $100,000 to $500,000. General damages are those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment or other losses of life or lifestyle which cannot be definitely measured in monetary *835 terms. Lawrence, supra; McDaniel v. Hamilton, 41,588 (La.App. 2d Cir.12/13/06), 945 So.2d 272; Keeth v. State, through Dept. of Pubic Safety and Transp., 618 So.2d 1154 (La.App. 2d Cir. 1993), writ dismissed, 619 So.2d 563 (La. 1993). Defendants contend that while the jury award was admittedly conservative, it was not so low as to merit the increase by the trial court through the JNOV.
A JNOV is the procedural device authorized by La. C.C.P. art. 1811 whereby the trial court may correct a legally erroneous verdict by modifying fault or damages, or both, that the jury may have assessed. Tolbird v. Wyble, 38,969 (La. App. 2d Cir.12/15/04), 892 So.2d 103, writs denied, 05-0444 and 05-0449 (La.4/29/05), 901 So.2d 1066-67, cert. denied, 546 U.S. 876, 126 S.Ct. 387, 163 L.Ed.2d 172 (2005); Jackson v. A.L. & W. Moore Trucking, 609 So.2d 1064 (La.App. 2d Cir.1992). JNOV is a question of whether the jury verdict, as a matter of law, is supported by any legitimate or substantial evidence. To determine that the evidence was insufficient as a matter of law requires a finding that no valid line of reasoning and permissible inferences could possibly lead rational persons to the conclusions reached by the jury. Scott v. Hospital Service District No. 1 of St. Charles Parish, 496 So.2d 270 (La.1986); Morehead v. Ford Motor Co., 29,399 (La.App. 2d Cir.5/21/97), 694 So.2d 650, writ denied, 97-1865 (La.11/7/97), 703 So.2d 1265; Gibson v. Bossier City General Hospital, 594 So.2d 1332 (La.App. 2d Cir.1991).
In applying this standard, the trial court may not substitute its judgment of the facts for that of the jury and must consider all the evidence in the light most advantageous to the party in whose favor the jury verdict was rendered, giving this party the benefit of every legitimate and reasonable inference that could have been drawn from the evidence. Scott, supra; Gibson, supra. The trial court does not have the discretion to weigh the evidence, evaluate the credibility of witnesses or substitute its judgment for that of the jury. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991); Morehead, supra. All reasonable inferences or factual questions should be resolved in favor of the nonmoving party. Anderson, supra; Chambers v. Graybiel, 25,840 (La.App. 2d Cir.6/22/94), 639 So.2d 361, writ denied, 94-1948 (La.10/28/94), 644 So.2d 377.
The scales are tilted in favor of the survival of the jury's verdict, but the trial court is left with a breadth of discretion which varies with the facts and events of each case. Gibson, supra. What the appellate court reviews is the decision of the trial judge, who has attempted to balance the great deference afforded to the jury's verdict against his obligation to insure that substantial justice was accomplished. Appellate review is limited to whether the trial court committed manifest error or was clearly wrong in granting or denying JNOV. Tolbird, supra; Chambers, supra; Gibson, supra.
Mr. Mahmood testified that, after the accident, he looked around to see his best friend seated next to him with injuries to his head, his wife in the back seat not moving and then one of his daughters in back crying. He did not see his other two daughters. As he attempted to turn to see his family, he discovered that his hand was hanging limp with both bones protruding through his skin. He testified to having pain as he attempted to look at his family before he lost consciousness. He remembers the sounds of metal being cut and later learned that his car had to be cut open to get him out.
The record reflects that Mr. Mahmood suffered severe injuries as a result of the accident. As stated above, he broke his *836 femur (the thigh bone) in two places. Both fractures required surgery. To treat the fracture at the neck of the femur, near the hip joint, the surgeon placed pins across the fracture. For the fracture of the shaft of the femur, the straight part of the bone, the surgeon inserted a metal rod at the knee joint through the femur across the fracture and then fixed the rod with screws. The metal pins and rods in place on both of the injuries are permanent and cannot be removed without weakening the bone.
Mr. Mahmood's ankle was crushed in the accident. The first attempt to treat his ankle was to employ an external fixator. A pin was drilled through his heel bone, which protruded from both sides of his foot. Two pins were placed in his lower tibia (his shin bone), which also protruded from his skin. An external frame was then attached to the pins in an attempt to align his ankle to promote healing. Mr. Mahmood's first operation treated the ankle and the femur, along with cleaning and setting his forearm.
In addition, Mr. Mahmood broke both bones of his forearm and both bones protruded from his skin. Mr. Mahmood underwent a second surgery where surgeons placed an internal fixator across the fracture in his arm. The second surgery was necessary to prevent prolonged anesthesia during the first operation. Mr. Mahmood was hospitalized for three weeks following the accident. After discharge, he was to remain in his wheelchair except for being transferred to his bed.
Mr. Mahmood's treatment continued for many months in which he underwent several treatments for infections of his wounds, particularly his ankle wound. His ankle injury failed to heal with the external fixator; and, in June 2005, he underwent a fusion of his ankle bone. This procedure involved the removal of the cartilage in his ankle and then locking his ankle into place with a pin through the ankle and into the tibia.
In July 2007, Mr. Mahmood developed a serious infection in his ankle. He was again hospitalized and underwent several surgeries in an attempt to combat the infection. On July 21, 2005, Mr. Mahmood's leg was amputated from below the knee due to an infection in his bone. After the incision from the amputation healed, Mr. Mahmood wore several special compression stockings on his stump over a course of several months to decrease its size for a snug fit into the prosthesis. At the time of trial, he was fitted with his permanent prosthesis.
In summary, this record reflects that Mr. Mahmood suffered severe injuries as a result of the accident and that he underwent numerous painful treatments. In addition, Mr. Mahmood testified that he was in a wheelchair for the first three or four months and that he was unable to use the bathroom without assistance for three months. He could not walk from the time of the accident until he was fitted with a prosthetic.
Defendants argue that this court should discount both Mr. Mahmood's testimony and the medical evidence because its presentation at trial was arguably flawed. Specifically, they contend that, because Mr. Mahmood and his wife spoke in heavily accented English, the jury could not understand them and that this court should consider their testimony with the same hindrance. Further, the medical testimony was presented by video deposition, along with the medical records submitted into evidence. Defendants argue that this form of presentation was unpersuasive to the jury and we should be equally unimpressed by it in our review. We reject such an argument.
*837 While even the transcribed testimony of Mr. Mahmood and Ms. Talat reflects a limited English proficiency, it nevertheless shows that Mr. Mahmood was severely and irreparably injured. The medical testimony by video deposition explains the multiple procedures and complications Mr. Mahmood experienced since the accident. We do not need the assistance of either the victim or a medical doctor to comprehend the pain and emotional toll from such severe trauma. Such testimony, of course, would be helpful in our decision, but to the degree the testimony presented to the jury was unclear or unpersuasive, the basic facts proven in the record more than substantiate the general damages as awarded by the trial court on JNOV.
Based on our review of the record, the trial court was not manifestly erroneous in finding that the jury verdict was abusively low and increasing Mr. Mahmood's general damages to $500,000.

Talat Kousar
Plaintiffs appeal the general damages award of $10,000 to Ms. Kousar as abusively low and request that this court increase it. They do not appeal the trial court's denial of the JNOV, but, instead, appeal the jury verdict on general damages.
When reviewing the amount of general damages as defined above, the question before a reviewing court is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. Lawrence, supra; McDaniel, supra; Gladney v. May, 29,373 (La. App. 2d Cir.5/7/97), 697 So.2d 1022, writ denied, 97-2417 (La. 1/9/98), 705 So.2d 1101. To determine if the quantum is inadequate, the appellate court must view the evidence in the light most favorable to the defendant. McDaniel, supra; O'Brien v. Remington Arms Co., Inc., 601 So.2d 330 (La.App. 2d Cir.1992), writ denied, 604 So.2d 1003 (La.1992). Only after an articulated analysis of the record discloses an abuse of discretion may the appellate court determine that the award is either excessive or insufficient. Reck v. Stevens, 373 So.2d 498 (La.1979); Gladney, supra.
As described above, Ms. Kousar suffered a tear in her spleen, a broken rib and a pulmonary contusion, or a bruise of the lung. She required a blood transfusion because the torn spleen was bleeding into her body cavity. Her injuries resolved without the need for surgery. She stayed in the hospital for eight days following the accident and was released in good condition according to the testimony of her doctor. She testified that she continued to need pain medication to sleep and that she continued to have problems with her neck.
Plaintiffs argue that, in addition to these physical injuries, this court should consider the tremendous effect this accident had on her home life. As described above, her husband, Mr. Mahmood, was severely injured and was unable to take care of either himself or the family business. Ms. Kousar had to transform herself from exclusively caring for her home and children to also maintaining the family business and assisting her injured husband. This impact on Ms. Kousar, however, is not due to her injury, but is, instead, due to the injury suffered by Mr. Mahmood. As such, it is properly considered part of her consortium claim, which includes sexual relations, along with the love and affection, society and companionship, support, aid and assistance, felicity and performance of material services, such as uncompensated work around the home. Billiot v. K-Mart Corp., 99-1569 (La.App. 1st Cir.6/23/00), 764 So.2d 329, writ denied, 00-2211 (La.10/13/00), 771 So.2d 653. Plaintiffs do not assign the amount of Ms. Kousar's *838 consortium claim as error; and, therefore, this issue is not before us.
From our review of the record, we conclude that the jury's verdict on general damages was more than reasonably supported by the evidence. Ms. Kousar recovered from her injuries for the most part within a matter of weeks and without surgery. The greatest effect of the accident on Ms. Kousar resulted from the injuries to her husband, which, as discussed above, are outside the scope of general damages.

Isha Mahmood
Plaintiffs also appeal the jury verdict of $15,000 in general damages for Isha Mahmood. Isha was only a few days old at the time of the accident and suffered a severe brain injury. Her doctor testified that, on her initial assessment, Isha was "quite sick and not very responsive." Isha was on a respirator and showed increased pressure at her anterior fontanel, or soft spot, indicating increased pressure in her skull. She had some spontaneous movements which indicated that she was not totally comatose. Isha also showed weakness in her right side indicating injury on the left side of her brain. As a result of the injuries, Isha had seizures while in the hospital, which were controlled with anti-seizure medication. She was discharged after three weeks in the hospital. By the time of her final follow-up appointment, she was doing well with very mild right side weakness. Isha showed age appropriate development. Isha's doctor testified that, because of her injury, there is still the possibility of future seizures, but that she had a good prognosis.
Isha made a complete recovery without the need for surgery. We, therefore, find that the record reasonably supports the jury's award for Isha's general damages.

CONCLUSION
For the foregoing reasons, we affirm the judgment of $500,000 in general damages for Tariq Mahmood, $10,000 in general damages for Talat Kousar and $15,000 in general damages for Isha Mahmood. Costs of appeal are assessed equally between the parties.
AFFIRMED.
NOTES
[1] In briefing, both parties describe this category of damages as "pain and suffering;" and, at oral argument, counsel for Defendants argued that this court should only consider Plaintiffs' physical pain and suffering. The jury instructions, however, provided for "general damages" and defined them with language that tracks the accepted definition for general damages which includes mental distress. Lawrence v. City of Shreveport, 41,825 (La.App. 2d Cir.1/31/07), 948 So.2d 1179, writ denied, 07-0441 (La.4/20/07), 954 So.2d 166. Further, the jury verdict form described the damage item as "physical injury including past and future pain and suffering and mental anguish," to which the jury awarded $100,000 for Mr. Mahmood, $10,000 for Ms. Talat and $15,000 for Isha. We, therefore, consider these awards as general damages.