948 So.2d 1179 (2007)
Sondra LAWRENCE, Plaintiff-Appellee
v.
City of SHREVEPORT, Defendant-Appellant.
No. 41,825-CA.
Court of Appeal of Louisiana, Second Circuit.
January 31, 2007.
*1182 Davis Law Office, LLC, by S.P. Davis, Sr., for Appellant.
Hayter & Odom, L.L.C., by Mark W. Odom, Shreveport, for Appellee.
Before BROWN, STEWART and CARAWAY, JJ.
CARAWAY, J.
After spending an afternoon boating, plaintiff exited her friend's boat and moved across a concrete dock owned by the City of Shreveport onto a grassy waterfront lot. As she left the edge of the concrete, plaintiff fell into a hole caused by lake water erosion and received injuries to her left knee. Claiming that the hole was not apparent due to overgrown grass, plaintiff successfully sued the City of Shreveport and was awarded damages for the injuries from the accident. The City of Shreveport appeals the fault findings of the trial court, and the plaintiff seeks an increase in the damage award. Finding no manifest error in the trial court's judgment, we affirm.

Facts
On April 4, 2004, during spring break, Sondra Lawrence was invited to go boating on Cross Lake in Shreveport with her friend Wilma Watkins. Lawrence's roommate at the time, Randall Behrens, joined her for the excursion. As was their custom, the three planned to spend the day fishing and relaxing on Watkins' party barge. Lawrence and Behrens met Watkins at the Ford Park public boat launch at approximately 1:30 or 2:00 in the afternoon. The two boarded the boat without incident and enjoyed five to six hours of eating, drinking, fishing and relaxing with Watkins. Lawrence admitted to drinking three, twelve ounce beers during the boat trip in addition to consuming food.
By late afternoon, Lawrence asked Watkins to return to the public boat launch. Watkins docked the boat at the same launch and Lawrence disembarked alone. She stepped onto a concrete slab forming the edge of the seawall skirting the dock. Lawrence's pathway to her car and the public restroom required her to step off of the concrete slab and onto a grassy area. As her left foot moved from the concrete to the grass, however, Lawrence's left leg encountered a large washed out area on the edge of the cement. Her leg dropped into the hole to hip level.
Lawrence contended she could not see the washed out hole because it was covered by grass which in her approximation measured between 6 or 8 inches above the concrete. Behrens corroborated her estimate and Watkins guessed the grass measured four to five inches over and around the hole. Lawrence claimed that she was not intoxicated or distracted as she fell.
Upon falling, Lawrence yelled for help from Behrens and Watkins who remained on the barge. They found her sitting on the ground with her leg still in the hole. They put her back on the boat and applied an ice pack on her knee which had begun to swell. The three testified inconsistently about taking Lawrence home, but she returned *1183 home that night without seeking medical attention for her knee.
Lawrence had recovered from previous knee replacement surgery on her left knee in 1999. After trying to work as a coach and teacher the week after the accident, she sought medical care when she realized her leg was not getting better. She saw an orthopedic specialist, Dr. Steven Atchison, first on April 12, 2004, and reported marked increased pain in her left knee since her fall 8 days earlier. Lawrence was relieved from work by Dr. Atchison for the balance of the school term. Dr. Atchison treated her conservatively until May 9, 2005, when Lawrence underwent surgery for a revision of the prior knee replacement and the repair of a loose tibial tray. After surgery, Lawrence attended physical therapy through July and was released by Dr. Atchison on October 28, 2005.
Lawrence instituted this action against the City of Shreveport ("the City") as custodian of the municipal boat ramp alleging improper maintenance of the premises. The day before trial, the City moved to compel discovery of photographs Lawrence took of the accident site right after she fell, which Lawrence claimed she lost. The trial court ultimately accepted Lawrence's explanation for the missing photographs. The trial proceeded and the trial court assessed the City with total fault, awarding Lawrence $38,969 in special damages and $75,000 in general damages.
In its thorough eleven-page ruling, the trial court found the sink hole presented a known, unreasonably dangerous condition that the City failed to remedy within a reasonable time. The court rejected the City's spoliation claim regarding the photographic evidence.
The City appeals the trial court's determination of fault of the parties. Lawrence also seeks a higher award of general damages, for her pain and suffering.

Discussion

I.
Regarding its liability, the City argues that the trial court erred in finding that the evidence showed that an accident or injury to Lawrence occurred and in failing to find Lawrence totally or at least 95% at fault due to her intoxication. Great emphasis is placed on certain inconsistencies in the testimony of the three witnesses to the accident. The City also argues it had no actual or constructive notice of the hole or the uncut grass.
In relevant part, the provisions of La. R.S. 9:2800 set forth the requirements of liability for public bodies as follows:
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
B. Where other constructions are placed upon state property by someone other than the state, and the right to keep the improvements on the property has expired, the state shall not be responsible for any damages caused thereby unless the state affirmatively takes control of and utilizes the improvement for the state's benefit and use.
C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

*1184 D. Constructive notice shall mean the existence of facts which infer actual knowledge.
The determination of whether a defect presents an unreasonable risk of harm involves factual findings which differ in each case. Thus, there is no fixed or mechanical rule for determining whether a defect presents an unreasonable risk of harm. Buchignani v. Lafayette Ins. Co., 41,384 (La.App.2d Cir.8/23/06), 938 So.2d 1198; McAdams v. Willis Knighton Medical Center, 38,181 (La.App.2d Cir.12/19/03), 862 So.2d 1186; Reitzell v. Pecanland Mall Assoc., Ltd., 37,524 (La.App.2d Cir.8/20/03), 852 So.2d 1229. The unreasonable risk of harm analysis requires the trier of fact to balance the gravity and risk of harm against individual and societal rights and obligations, the thing's social value and utility, and the cost and feasibility of repairing the defect. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362; Reitzell v. Pecanland Mall Assoc., Ltd., supra. The accident history of the defect is also a pertinent consideration. Boyle v. Board of Supervisors, Louisiana State University, 96-1158 (La.1/14/97), 685 So.2d 1080; Reed v. Wal-Mart Stores, Inc, supra. The question for the trier of fact is whether the social value and utility outweigh, and thus justify, the potential harm to others. Reed v. Wal-Mart Stores, Inc., supra.
Under La. R.S. 9:2800, constructive notice is defined as the existence of facts which imply actual knowledge. This definition allows for the inference of actual knowledge to be drawn from the facts demonstrating that the defective condition had existed for such a period of time that it should have been discovered and repaired if the public entity had exercised reasonable care. Johnson v. City of Bastrop, 41,240 (La.App.2d Cir.8/1/06), 936 So.2d 292.
The district court's findings pursuant to R.S. 9:2800 are subject to manifest error review. Graves v. Page, 96-2201 (La.11/7/97), 703 So.2d 566; Johnson v. City of Winnfield, 37,939 (La.App.2d Cir.12/10/03), 862 So.2d 433; Joseph v. City of New Orleans, 02-1996 (La.App. 4th Cir.3/5/03), 842 So.2d 420. Under this standard, the appellate court will review the entire record to determine whether the trial court's findings were clearly wrong or manifestly erroneous. Stobart v. State, through Dept. of Transp. and Dev't., 617 So.2d 880 (La.1993). In order to reverse, the appellate court must find that a reasonable basis does not exist for the finding of the trial court and that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120 (La.1987).
Because of its superior position to view the demeanor of witnesses, the district court's decision to credit the testimony of one of two or more witnesses can virtually never be plainly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are more reasonable. Rosell v. ESCO, supra; Collins v. City of Shreveport, 35,172 (La.App.2d Cir.10/31/01), 799 So.2d 630.
Comparative fault is an affirmative defense. Dupree v. City of New Orleans, 99-3651 (La.8/31/00), 765 So.2d 1002; Murray v. Ramada Inns, 521 So.2d 1123 (La.1988). The courts that have required proof by a preponderance of the evidence for establishing an affirmative defense constitute an overwhelming majority. Hanks v. Entergy Corp., 06-477 (La.12/18/06), 944 So.2d 564; Harmon v. Lumbermens Mutual Casualty Co., 247 La. 263, 277, 170 So.2d 646, 651 (1965).
*1185 The structure in question where the barge docked was principally a seawall around a small peninsula. The seawall photographs show a wide slab of concrete running along the top of the seawall and a low railing for which to tie a boat. This sidewalk-like slab formed part of the seawall structure and provided a place to step on board or disembark. The concrete did not lead to the parking lot like a sidewalk but followed the wall as it extended along the shoreline. Therefore, a pedestrian exiting a boat would step over the low railing onto the "sidewalk," and then be expected to get off the concrete and walk across the grass to reach the parking lot.
The undermining of the ground beneath the sidewalk-like slab was depicted in Lawrence's photographs from June 2004. Duane Stautzenberger, the chief supervisor of grounds for Shreveport Parks and Recreation, testified concerning the City's knowledge of the problem. He stated that he visited the public boat launch at least three times a month. Further, grounds maintenance employees inspected the boat launch area for holes and grass conditions daily. He was familiar with the holes caused by erosion and aware that the City filled the holes with asphalt fifteen to twenty times. Stautzenberger explained holes can form overnight, generally in different places. During mowing season, tractors cut the grass once a week and the trim crews cut what is left every three to four weeks. According to the City's records, the trim crews last worked the area on January 22, 2004, and no further work was documented until April 19, 2004. He surmised that this lapse in work activity occurred because the grass does not grow much in late January or February and tends to sprout in early April. He admitted that clover and early spring grasses would be present in April. Stautzenberger concluded that the hole in question was not filled until August 12, 2004.
Under examination by the City, Stautzenberger testified that he had never seen April growth taller than 2 inches. He admitted that the City got complaints about the holes, but no prior accident had occurred. When complaints occurred, a priority work order was prepared and the problem was handled the same day or the next morning. No one reported the holes depicted in the June 2004 photographs presented at trial. Stautzenberger explained that there is a supervisor's office at the park. Individuals from this office inspect the location daily for grass condition and holes. In his experience, the holes were obvious and never covered by grass.
From our review of this evidence and the record, we agree with the trial court's conclusion that the erosion and sink holes along the edge of the concrete dock site posed an unreasonable risk of harm. The ground itself was weakened and undermined continuously by the water and wave action against the seawall, allowing the weight of Lawrence's foot to unexpectedly slip into or open a hole. This, coupled with the early spring grasses, clover or weeds, created a trap giving the appearance of a solid and level landing to a person stepping off the concrete. There was no sidewalk leading away from the seawall to the parking lot. An individual getting off a boat would be expected to step onto weakened ground. There was no evidence of a warning about this condition to the public although the City knew of the problem and the ability of the sink holes to develop continuously because of the lake's wave action.
The City argues that it did not have notice of the particular hole into which Lawrence fell, and there were no prior accidents at this location. This does not mean, however, that plaintiff failed to *1186 prove the knowledge element of her claim as required by La. R.S. 9:2800(C). The ongoing conditions for erosion which placed this type of trap before the public were well-known to the City. These same conditions allow affirmance of the trial court's ruling that Lawrence was not at fault. As described above, the record supports the reasonable conclusion that the ground adjacent to the sidewalk appears more solid when the grass disguises the dip on the surface. Moreover, the weakened soil adjacent to the concrete circumstantially allows for the conclusion that Lawrence's weight caused the ground to further give way beneath her.
Additionally, the City focuses its arguments on inconsistencies in the testimony of the three witnesses as well as their demeanor and tone, which it contends were "obviously troublesome and suspect." However, the jurisprudence holds that the trial court is in a superior position to view the demeanor of witnesses, and the decision to credit the testimony of one of two or more witnesses can virtually never be plainly wrong. Rosell v. ESCO, supra.
In its reasons for judgment, the trial court gave extensive credibility rulings in answer to the City's arguments, as follows:
Just because there are some inconsistencies in how people describe things and how people recall a sequence of events does not automatically mean the plaintiff is lying as insinuated by the City.
* * *
The Court carefully observed the plaintiff's demeanor in court during the two-day trial and listened carefully to her testimony. The Court found her to be credible. She was 41 years old at the time of trial. She has an athletic background, and played basketball in college. She is the mother of twin 16 year old boys. She is employed by the Caddo Parish School Board and teaches handicapped children. She also serves as the softball coach at Caddo Magnet High School. In June of 1999 she had double knee replacement surgery in Texas, which was a very painful experience. She testified she recovered fully from the 1999 surgery and was in "good condition" at the time of the fall on April 4, 2004. This boating excursion was her first trip to Cross Lake in 2004 and came at the end of her school spring break. She candidly admitted she drank three (3) twelve (12) ounce Coors beers over the course of the five hour boat excursion. She also ate sandwiches, chips and other food and also drank water and Gatorade. She testified she was not impaired. Her friends corroborated that she was not drunk. She appeared to the Court to be a stoic person who clearly does not like to go to doctors or take pain medicine unless absolutely necessary. The Court believed her testimony that her left leg fell into a hole that she did not see. She testified she did not see the hole as it was obscured by grass and clover. She testified that she put off the surgery as long as possible because she knew how painful the procedure and physical therapy would be as she had experienced all this in 1999. She testified she kept hoping her knee would be better.
Likewise, Lawrence's knee injury was adequately established not only through Behrens' and Watkins' testimony, but also by the testimony of other friends who observed Lawrence's painful knee problems after the accident. Lawrence's failure to immediately seek medical treatment was characterized by Dr. Atchison as appropriate, thus disproving the City's argument that her actions were suspect.
The City also complains that the knee damage was caused by a subsequent accident *1187 on March 12, 2005. In rejecting this argument, the trial court accepted the testimony of Dr. Atchison that the April 4, 2004 fall caused the loosening of the prior knee replacement that was the ultimate cause for surgery. Lawrence's subsequent twisting of her left knee merely aggravated the existing problem. The City presented no contrary medical testimony to refute Dr. Atchison's conclusions. Thus, the trial court was free to accept Dr. Atchison's opinion which was supported by Lawrence's knee x-rays taken before and after the March 12, 2005 incident.

II.
The City next argues the trial court committed manifest error when it accepted as true, Lawrence's explanation for her failure to produce photographs she took of the accident site both on the day of the accident and on the following day. Further, the City argues that it was entitled to an adverse presumption in connection with the missing photographs.
Where a litigant fails to produce evidence available to him and he does not provide a reasonable explanation, the presumption is that evidence would have been unfavorable. That presumption does not apply where the litigant explains the failure to produce the evidence. Small v. Baloise Ins. Co. of America, 96-2484 (La. App. 4th Cir.3/18/98), 753 So.2d 234, writ denied, 98-1345 (La.7/2/98), 724 So.2d 733. A trial court has broad discretion in ruling on pre-trial discovery, and an appellate court should not upset such a ruling absent an abuse of that discretion. Moak v. Illinois Central Railroad Co., 93-0783 (La.1/14/94), 631 So.2d 401.
On the day of the accident, Lawrence used her cell phone camera to photograph the hole where she fell. She testified that the cell phone was later destroyed when the team she coached poured water on her after a game and ruined it. She also testified that she misplaced the photographs she and Watkins took the next day and they were probably lost during a move. In denying the City's motions, the trial court "accepted the plaintiff's explanation about the loss of the pictures" and specifically rejected the City's argument that Lawrence intentionally destroyed evidence which was unfavorable.
Significantly, the photographs which are the subject of this dispute were depictions of the defective property which remained continuously in the custody of the City. This is not a case of one party destroying, altering or concealing evidence exclusively in that party's control. The June 2004 photos which were also taken by Lawrence reveal the same eroded condition of the ground adjacent to the concrete dock and seawall, with the primary change being the condition of the trimmed grass. The trial court accepted the testimony of the three witnesses regarding the high grass, and the City's records corroborate the lack of maintenance of the grass during the time in question. The trial court's acceptance of Lawrence's explanation of the lost photos is a credibility determination which will not be disturbed on appeal.

III.
By answer to the appeal, Lawrence requests an increase in her general damage award of $75,000 to $125,000 and argues that the trial court erred in concluding that she failed to mitigate damages by prolonging the surgery. Lawrence also requests an increase of $165.23 in special damages, representing prescription medication denied by the trial court.
A plaintiff may ordinarily recover reasonable medical expenses, past and future, incurred as a result of the injury. Solito v. Horseshoe Entertainment, *1188 36,667 (La.App.2d Cir.12/18/02), 834 So.2d 610; Rhodes v. State, through Dep't of Transp. & Dev., 94-1758 (La.App. 1st Cir.12/20/96), 684 So.2d 1134, writ not considered, 97-0242 (La.2/7/97), 688 So.2d 487. The plaintiff bears the burden of proving the causal relationship between the accident and the injury by a preponderance of the evidence. Solito v. Horseshoe Entertainment, supra; Marshall v. Caddo Parish School Bd., 32,373 (La.App.2d Cir.10/29/99), 743 So.2d 943; Rhodes v. State, through Dep't of Transp. & Dev., supra. The test is whether a plaintiff has shown through medical testimony that more probably than not, the subsequent medical treatment was necessitated by the trauma suffered in the accident. Rhodes v. State, through Dep't of Transp. & Dev., supra.
In assessing damages, much discretion is left to the trier-of-fact. La. C.C. art. 2324.1; Solito v. Horseshoe Entertainment, supra; Scott v. Pyles, 99-1775 (La. App. 1st Cir.10/25/00), 770 So.2d 492, writ denied, 00-3222 (La.1/26/01), 782 So.2d 633; Juge v. Judson, 94-579, 94-580 (La. App. 5th Cir.1/18/95), 650 So.2d 312, writ denied, 95-0425 (La.3/30/95), 651 So.2d 846. Before an appellate court may disturb an award of damages, the record must clearly show the trial court abused its broad discretion in making the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
General damages are those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms. McDaniel v. Hamilton, 41,588 (La.App.2d Cir. 12/13/06), 945 So.2d 272; Keeth v. State, through Dept. of Pubic Safety and Transp., 618 So.2d 1154, (La.App.2d Cir. 1993), writ dismissed, 619 So.2d 563 (La. 1993). The question before a reviewing court is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. McDaniel v. Hamilton, supra; Gladney v. May, 29,373 (La.App.2d Cir.5/7/97), 697 So.2d 1022, writ denied, 97-2417 (La.1/9/98), 705 So.2d 1101. To determine if the quantum is inadequate, the appellate court must view the evidence in the light most favorable to the defendant. McDaniel v. Hamilton, supra; O'Brien v. Remington Arms Co., 601 So.2d 330 (La.App. 2d Cir.1992), writ denied, 604 So.2d 1003 (La.1992). Only after an articulated analysis of the record discloses an abuse of discretion may the appellate court determine that the award is either excessive or insufficient. Reck v. Stevens, 373 So.2d 498 (La.1979); Gladney v. May, supra.
An injured party has a duty to mitigate her damages. Aisole v. Dean, 574 So.2d 1248 (La.1991); Sepulvado v. Turner, 37,912 (La.App.2d Cir.12/10/03), 862 So.2d 457. The victim has an affirmative responsibility to make every effort to mitigate damages, but the care and diligence required is the same as that which would be used by a person of ordinary prudence under like circumstances. Id. Personal injury plaintiffs must minimize their damages by submitting to reasonable corrective surgery necessary to eliminate any permanent disability. Pisciotta v. Allstate Ins. Co., 385 So.2d 1176 (La.1979).
Relating to special damages, Lawrence attempted to introduce a document generated by a pharmacy and sent to Lawrence that allegedly documented medications prescribed by Dr. Atchison. The *1189 trial court would not allow it to be admitted under the business records exception to the hearsay rule because no custodian of the records was available to testify. The court allowed questioning of Lawrence, however, regarding the medications. Nevertheless, the court rejected the claim for lack of proof by Lawrence. We can find no error in this determination. In her testimony regarding the medications, Lawrence failed to state that Dr. Atchison prescribed the medication for her in relation to her knee pain or surgery. In fact, Lawrence admitted that $27.00 worth of the prescriptions were unrelated to her condition. Without a foundation being laid for introduction of the document into evidence or testimony relating those medications to the knee surgery or pain, we cannot conclude that the trial court erred in rejecting Lawrence's claim for these special damages for lack of proof.
In making the general damage award to Lawrence, the trial court concluded that Lawrence should have elected to have the knee revision in June of 2004 rather than May of 2005. Because of Lawrence's choice to delay the surgery that caused eleven months of pain and suffering, the court concluded that she failed to mitigate damages.
The record supports this conclusion. In his deposition testimony, Dr. Atchison testified that by June of 2004, he had determined that the revision surgery was necessary. He testified that he went over his conclusions and recommendations with Lawrence but noted that she was "certainly not interested in having anything done at this time; meaning having a knee replacement. I mean, I talked to her about knee replacement then, because a mechanically loose prosthesis isn't going to get better." Dr. Atchison added that it was not until March of 2005 that Lawrence decided to have surgery which was ultimately performed on May 9, 2005. From this testimony, the trial court could have reasonably concluded that Lawrence's delay caused nearly a year of unnecessary pain and suffering for her. Absent this time period from the consideration of general damages, the award of $75,000 general damages, which represented two months of pain after the accident and surgical and post-surgery pain and suffering, indicates no abuse of the trial court's discretion.

Conclusion
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of the appeal in the amount of $214.00 are assessed to the City in accordance with La. R.S. 13:5112.
AFFIRMED.