BROWN, Chief Judge.
 

 11
 
 Defendant, Bossier Parish School Board, appeals from a judgment finding it liable for the damages sustained by plaintiff, Shirley McCoy LeBlanc, when multiple shelves fell on her at the Bossier Parish School Board Resource Center. We affirm.
 

 Facts and Procedural Background
 

 On June 30, 1997, plaintiff was instructed by her supervisor, Larry Powell, to go to the Bossier Parish School Board Resource Center to use some die cuts. Plaintiff was told to go on June 30th because on the next day, July 1, 1997, operational control over Bossier Parish Community College, where plaintiff worked, was going to shift from the School Board to the State Board of Regents. Plaintiff, however, was not able to go to the resource center that day due to a previously scheduled doctor’s appointment.
 
 [1]
 
 Mr. Powell called Mary
 
 *594
 
 Hollingsworth, a Bossier Parish School Board employee working at the resource center, and obtained permission for plaintiff to use the facilities the next morning.
 

 On July 1, 1997, plaintiff went to the resource center to do the die-cutting. Procedure required people to sign in prior to using the resource center; plaintiff, however, following the instructions of Mr. Powell, did not sign in. After several hours of using the die cuts, when plaintiff was ^attempting to reshelve two used die cuts, two shelves came loose and fell on her, pinning her against a wooden table.
 

 The following day plaintiff filed an accident report with the State and went to the emergency room. Both the accident report and the medical report state that plaintiff sustained injuries to her right shoulder, right hand, right foot, right hip, and her right leg. During the 12-year period from the date of the incident to trial, plaintiff visited a multitude of doctors, physical therapists, and pain management specialists complaining of severe back pain and right leg pain caused by the falling shelves. Plaintiffs pain in all other areas had resolved prior to February 1998. Plaintiff was eventually diagnosed with probable piriformis syndrome, which can cause back pain, numbness and tingling in the legs.
 

 A bench trial was held on July 24, 2009. Thereafter, on October 7, 2009, the trial court signed a judgment in favor of plaintiff, awarding her $50,000 in general damages and $29,585.11 in medical expenses. Defendant appeals the judgment of the trial court; however, defendant does not challenge causation or quantum.
 

 Discussion
 

 Defendant asserts three assignments of error, two pertaining to unreasonable risk of harm and the issue of notice, and one dealing with whether a “lesser duty” was owed to plaintiff since, defendant alleges, she was an admitted trespasser. Moreover, defendant contends that the trial court’s failure to consider this “lesser duty” was an error of law, and, as such, the proper standard of review is
 
 de novo.
 

 13Our review of the record, however, does not support defendant’s contention that plaintiff was an admitted trespasser. Plaintiffs testimony indicated that Ms. Hollingsworth informed Mr. Powell that she could use the die cuts at the resource center on July 1, 1997. Plaintiffs admission that she did not utilize the sign-in sheet does not equate to an admission of trespassing. Thus, since defendant’s con-clusory argument regarding the alleged error of the trial court to consider a “lesser duty” owed is narrowly based upon plaintiff being a trespasser, which neither the trial court found nor plaintiff admitted to, we cannot find that the trial court committed an error of law by failing to consider whether defendant owed plaintiff a “lesser duty.” Consequently, we find both the assignment of error pertaining to “lesser duty” and defendant’s argument in support of
 
 de novo
 
 review to be without merit.
 

 Defendant’s next two assignments of error bear upon its liability: specifically, whether the shelves posed an unreasonable risk of harm, and if so, whether defendant had notice of the unreasonable risk of harm.
 

 
 *595
 
 Proof of a public entity’s liability is governed by La. C.C. art. 2317 and La. R.S. 9:2800. La C.C. art. 2317 provides that we are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. La. R.S. 9:2800 states, in pertinent part:
 

 A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
 

 [[Image here]]
 

 |4C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
 

 D. Constructive notice shall mean the existence of facts which infer actual knowledge.
 

 Therefore, to establish a claim under the aforementioned provisions, a plaintiff must show that: (1) the thing which caused the damage was in the care or custody of the public entity; (2) the thing was defective due to a condition that created an unreasonable risk of harm; (3) the public entity had actual or constructive knowledge of the condition yet failed to take corrective action within a reasonable period of time; and (4) the defect was a cause in fact of the plaintiffs harm.
 
 Jones v. Hawkins,
 
 98-1259 (La.03/19/99), 731 So.2d 216.
 

 The determination of whether a defect presents an unreasonable risk of harm involves factual findings which differ with each case. Thus, there is no fixed or mechanical rule for determining whether a defect presents an unreasonable risk of harm.
 
 Lawrence v. City of Shreveport,
 
 41,825 (La.App.2d Cir.01/31/07), 948 So.2d 1179,
 
 writ denied,
 
 07-0441 (La.04/20/07), 954 So.2d 166. Instead, the trier of fact must balance the gravity and risk of harm against individual and societal rights and obligations, the thing’s social value and utility, and the cost and feasibility of repairing the defect to determine whether the thing presents an unreasonable risk of harm.
 
 Reed v. Wal-Mart Stores, Inc.,
 
 97-1174 (La.03/04/98), 708 So.2d 362.
 

 | Jn its written opinion, the trial court succinctly analyzed its factual findings with the applicable law as follows:
 

 In the instant case, the shelves and cabinets were clearly within the care and custody of the school board. The court finds that the unsecured shelves stacked with boxes almost to the ceiling were a defective condition which created an unreasonable risk of harm. The cost and feasibility of correcting the defective condition was minimal.... The school board had notice of the condition in that its employees had originally placed the cabinets in the location they were in when they fell on the plaintiff. Furthermore, it should be emphasized that Mr. Bill Bruce [a School Board employee at the time] testified that in June of 1997, one month prior to Mrs. LeBlanc’s accident, he was in the same room and a shelf fell while he was reaching for a book.
 

 A trial court’s findings under La. R.S. 9:2800 are subject to manifest error review.
 
 Ricks v. City of Shreveport,
 
 42,-675 (La.App.2d Cir.10/24/07), 968 So.2d 863. Under this standard of review, the appellate court will review the entire record to determine whether the trial court’s
 
 *596
 
 findings were clearly wrong or manifestly erroneous.
 
 Lawrence, supra.
 

 Where there is a conflict in witness testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
 
 Rosell v. ESCO,
 
 549 So.2d 840 (La.1989). If a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
 
 Id.
 

 In attacking the trial court’s finding that the shelves as constructed constituted an unreasonable risk of harm, defendant does not argue the thing’s social value or utility, but rather it argues that there is a lack of evidence in the record to prove that the shelves were unreasonably |fidangerous on July 1, 1997. This argument, however, is without merit. Numerous witnesses testified that the shelves were unsecured and stacked almost to the ceiling. Harry Lodge, a School Board employee working at the resource center, testified that each shelf weighed 26 pounds and could be secured to the wall simply by placing a few screws through the back of the shelf, which he did when he picked up the fallen shelves on July 1,1997.
 

 Clearly, the "witness testimony supports the trial court’s finding that the defective condition of the shelves posed an unreasonable risk of harm. The likelihood, if even minimal, that one or more shelves could fall on someone no doubt outweighs the cost and feasibility of putting three screws into each shelf to secure it to the wall.
 

 Defendant contends that even if the shelves were defective, plaintiff failed to prove that it had notice that the particular shelves that fell on her were defective. Defendant asserts that Bill Bruce’s testimony, that in June of 1997, a different unsecured shelf in a different part of the room fell when he was reaching for a book, supports its contention. While, as defendant argues, Mr. Bruce’s testimony may not have shown that defendant had actual notice that the particular shelves that fell on plaintiff were defective, it does show the existence of facts sufficient to infer actual knowledge on the part of defendant of other similarly unsecured shelves.
 

 Lastly, defendant attempts to shift fault to plaintiff by arguing that she knew about the shelves’ defective condition, which made the condition of the shelves obvious and, therefore, not unreasonable. To support its |7argument that the risk of harm was obvious, defendant puts forth the testimonies of Mr. Bruce and Mr. Powell, both of whom stated that they had informed plaintiff about the shelf that fell when Mr. Bruce was at the resource center. Plaintiff testified, however, that she did not learn about the shelf that fell on Mr. Bruce until after her incident. Although the testimonies on this point are in contradiction, the trial court was within its discretion in finding plaintiffs version of events to be more credible. Even if one accepts Mr. Powell’s statement, it was made as a warning for plaintiff to be careful as he still sent her to get and use the die cuts.
 

 In summation, the shelves were in the custody of defendant, who had knowledge of the shelves’ condition yet failed to take any corrective action to prevent the defective condition from causing harm, i.e. by affixing the shelves to the wall. Accordingly, we find that the trial court was not manifestly erroneous in holding that the defective condition of the shelves posed an unreasonable risk of harm and that defendant had notice of said defective condition.
 

 
 *597
 

 Conclusion
 

 For the foregoing reasons, the judgment of the trial court is affirmed. The appellate filing fee of $121.50 is to be paid by the Bossier Parish School Board in accord with La. R.S. 13:5112.
 

 [1]
 

 . At trial plaintiff stated that her doctor’s appointment on June 30, 1997, was for migraines. The medical records submitted into evidence, however, show that on that date plaintiff complained of a hurt back and sharp pain in her right leg. The records also reflect that plaintiff's doctor was awaiting the MRI results of a scan of her lumbosacral spine taken two weeks earlier. Furthermore, around this time, according to plaintiff’s med
 
 *594
 
 ical records, plaintiff had begun experiencing right side numbness and weakness which were likely associated with plaintiff’s loss of consciousness in April 1997 as well as with her migraines.