# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1403

MARIE BENNIEFIEL

VERSUS

STINE, L.L.C. and ZURICH AMERICAN INSURANCE CO.

************

## APPEAL FROM THE
## FOURTEENTH JUDICIAL DISTRICT COURT
## PARISH OF CALCASIEU, NO. 2003-3176
## HONORABLE G. MICHAEL CANADAY, JUDGE

************

## J. DAVID PAINTER
## JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and J. David Painter, Judges.

**AFFIRMED.**

Roger M. Burgess
Erin M. Alley
P. O. Drawer 7820
Lake Charles, LA 70606
COUNSEL FOR PLAINTIFF-APPELLANT:
    Marie Benniefiel

James R. Morris
2917 Ryan St.
Lake Charles, LA 70601
COUNSEL FOR DEFENDANTS-APPELLEEE:
    Stine, L.L.C. and Zurich-American Insurance Co.

**PAINTER, Judge.**

Plaintiff, Marie Benniefiel, appeals a jury verdict finding that Defendant, Stine, L.L.C. (Stine), was not at fault with regard to her fall at a Stine location.

### FACTS AND PROCEDURAL HISTORY

Plaintiff alleges that she was injured on December 17, 2002, while she was a customer at Stine Lumber Company in Sulphur, Calcasieu Parish, Louisiana. According to her testimony, she and her mother bought a Christmas tree at Stine, and while her mother was supervising the loading of the tree, Plaintiff opened the door to their vehicle and a paper flew off the dashboard and across the temporary fence which partitioned the Christmas tree lot from the parking lot. She approached the fence, which was constructed of piers made of 8 x 16 inch cinder blocks placed vertically, narrow end down and stacked two high with landscape timbers lodged in the holes to form a barrier, put her hand on the stacked cinder blocks, and leaned over to reach for the paper. The fence fell, and she fell to the ground with it, incurring injuries to her knees and arms.

This case was previously before this court on an appeal from a summary judgment as *Benniefiel v. Zurich American Ins. Co.*, 08-1416, pp. 1-2 (La.App. 3 Cir. 5/6/09), 10 So.3d 381, 382-84 (footnotes omitted) (alterations in original), wherein this court summarized the procedural history to that point, as follows:

> The Defendants filed a Motion for Summary Judgment, seeking to dismiss Ms. Benniefiel's claims, on August 5, 2004. The trial court heard and denied the Defendants' motion on November 12, 2004.
>
> The matter proceeded to trial by jury from November 6 to 9, 2006. At the conclusion of the four-day trial, the jury, in an eleven-to-one vote, found in favor of the Defendants. A judgment memorializing the jury verdict was signed by the trial court on December 6, 2006.
>
> On December 19, 2006, Ms. Benniefiel filed a Motion for Judgment Notwithstanding the Verdict, or in the alternative, Motion for New Trial. A hearing on Ms. Benniefiel's motions was held on May 1, 2007. The trial court denied Ms. Benniefiel's Motion for

1

Judgment Notwithstanding the Verdict but granted her Motion for New Trial. The trial court signed a judgment to this effect on June 11, 2007.

On July 14, 2008, Ms. Benniefiel filed a Motion for Partial Summary Judgment on the issue of liability along with a Statement of Uncontested Facts. Ms. Benniefiel offered the following exhibits as evidence in support of her Motion for Partial Summary Judgment: the deposition of Ms. Benniefiel; the trial testimony of Joseph Buckley; the trial testimony of Michael Frenzel; the trial testimony of Jack Madeley; the deposition of Brian Vassar.; the trial testimony of Brian Vassar.; the deposition of Jack Madeley; the affidavit of Michael Frenzel, dated July 10, 2008; and, the affidavit of Ms. Benniefiel dated July 11, 2008.

On August 8, 2008, the Defendants responded by filing a Motion to Quash the Motion for Partial Summary Judgment wherein the Defendants urged:

No new evidence has been adduced since the trial, other than the deposition of Jack Madeley, wherein he testified his opinions in this trial will be identical to the first trial. Given this lack of new evidence, consideration of Plaintiff's Motion for Summary Judgment is improper. A potential grant of Plaintiff's motion would be tantamount to the [c]ourt granting Plaintiff's [Motion for Judgment Notwithstanding the Verdict], which the [c]ourt correctly ruled it could not do based on lack of grounds.

At the hearing held on August 12, 2008, the entirety of the suit record was introduced and accepted as a joint offering into the record of the summary judgment proceedings. After taking the matter under advisement, the trial court issued Written Reasons on August 19, 2008, granting Ms. Benniefiel's Motion for Partial Summary Judgment on the issue of liability.

This court reversed the trial court's grant of Plaintiff's Motion for Partial Summary Judgment and remanded for further proceedings.

The matter was tried to a jury on January 30 through February 2, 2012. After hearing the evidence, the jury checked "No" in response to the question on the jury verdict sheet: "Was there any fault, under the law applicable, on the part of the defendant, STINE, L.L.C.?"

Judgment was rendered in favor of Defendants, rejecting Plaintiff's demands. Plaintiff filed a motion for judgment not withstanding the verdict, which

the trial court denied. Plaintiff appeals asserting that the jury was clearly wrong in finding no fault on the part of Defendant, Stine, and that the trial court erred in denying her motion for JNOV.

## DISCUSSION

The burden of proof applicable in claims against merchants is set out in La.R.S. 9:2800.6, as follows:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
>
> C. Definitions:
>
> (1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
>
> (2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to

3

those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.

The second circuit in *Crisler v. Paige One, Inc.*, 42,563, pp. 7-9 (La.App. 2 Cir. 1/9/08), 974 So.2d 125, 131-32, described the burden of proof and standard of review applicable in a merchant liability case, as follows:

> A plaintiff must prove each of the three elements set forth in LSA-R.S. 9:2800.6(B). Failure to prove any of these required elements will prove fatal to a plaintiff's claim. *White v. Wal-Mart Stores, Inc.*, 97-0393 (La.9/9/97), 699 So.2d 1081; *Bell v. American General Inv. L.L.C.*, 40,117 (La.App.2d Cir.9/21/05), 911 So.2d 408.

> The determination of whether a defect presents an unreasonable risk of harm involves factual findings which differ in each case. Thus, there is no fixed or mechanical rule for determining whether a defect presents an unreasonable risk of harm. *Lawrence v. City of Shreveport*, 41,825 (La.App.2d Cir.1/31/07), 948 So.2d 1179, *writ denied*, 2007-0441 (La.4/20/07), 954 So.2d 166; *Buchignani v. Lafayette Ins. Co.*, 41,384 (La.App.2d Cir.8/23/06), 938 So.2d 1198; *Reitzell v. Pecanland Mall Assoc., Ltd.*, 37,524 (La.App.2d Cir.8/20/03), 852 So.2d 1229.

> The trier of fact determines whether a defect presents an unreasonable risk of harm. *Reed v. Wal-Mart Stores, Inc.*, 97-1174 (La.3/4/98), 708 So.2d 362; *Lawrence, supra*; *Reitzell, supra.* The unreasonable risk of harm analysis requires the trier of fact to balance the gravity and risk of harm against individual and societal rights and obligations, the thing's social value and utility, and the cost and feasibility of repairing the defect. *Id.* The question for the trier of fact is whether the social value and utility outweigh, and thus justify, the potential harm to others. *Reed, supra*; *Lawrence, supra.* The accident history of the defect is also a pertinent consideration. *Id.*

> The trial court's findings pursuant to LSA-R.S. 9:2800.6 are subject to the manifest error standard of review. A court of appeal should not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State Dept. of Transp. & Dev.*, 617 So.2d 880 (La.1993). The reviewing court must do more than just simply review the record for some evidence which supports or controverts the trial court's findings; it must instead review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. *Ambrose v. New Orleans Police Dept. Ambulance Serv.*, 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether

the factfinder's conclusion was a reasonable one. *Id.* The reviewing court must always keep in mind that if the findings of the trial court or jury are reasonable in light of the record reviewed in its entirety, the court may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Ambrose*, *supra*; *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106 (La.1990).

Because of its superior position to view the demeanor of witnesses, the trial court's decision to credit the testimony of one of two or more witnesses can virtually never be plainly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are more reasonable. *Id.*; *Collins v. City of Shreveport*, 35,172 (La.App.2d Cir. 10/31/01), 799 So.2d 630.

In this case, Plaintiff asserts that the fence constituted an unreasonably dangerous condition. Plaintiff's safety expert, Michael Frenzel, testified that the fence was a display to show goods and that it would not be realistic to think that no one would ever touch it. He stated that it constituted a good visual barrier but that it was reasonably foreseeable that someone would come into contact with the fence, lean on it, reach over it, or bump into it. He opined that the fence would look safe to an ordinary person but that even if the cinderblocks were perfectly aligned, the cinderblocks would have a propensity to fall over. He noted that there were no "Keep Off" signs and opined that the customer has a right to expect that there would be no hazards to guard against.

Mr. Frenzel opined that the fence was clearly a hazard and that if a child were to have climbed on it, it would have fallen. He testified that a four block, horizontal layout of the blocks would have eliminated the risk of the piers falling. He testified that Stine should have had policies, procedures, and rules published to its employees and should have made sure that the employees understood and followed them. He further stated that Stine should have been conducting timely safety inspections and paired hazard hunts of the premises, facilities, and equipment to identify, evaluate, and control customer hazards. He noted that Stine

5

didn't have a policy regarding how to build the fence, didn't train its employees to build it properly, and didn't publish a schematic of the way to build it.

Mr. Frenzel opined that Plaintiff's conduct was reasonable and that a safe fence could have been constructed out of the same materials using four blocks in a horizontal alignment at no greater cost since all the materials came out of Stine's inventory and were returned to inventory when the need for the fence was over.

On cross-examination, Mr. Frenzel admitted that there were no standards regarding how to build this kind of enclosure. However, he noted that something can be unsafe without a regulation against it.

Brian Vassar testified as the representative of Stine. He was the floor supervisor of the Sulphur store at the time of the accident, and he filled out the accident report. He stated that it was part of his job to recognize potential hazards with the Christmas tree display. He testified that he never recognized that someone could be hurt if they came into contact with the fence. He stated that he was not involved in the planning or construction of the fence or of similar fences constructed over the six years prior to the accident. Mr. Vassar testified that no instructions were given on how to make sure the fence was free of hazards and that he never considered the fence to be a hazard. A meeting was held on where to construct the fence but not on how to construct the fence. No discussion was had as to the stability of the fence, and no one in the meeting suggested that the fence wouldn't be touched. He stated that there was no reason that Stine could not have used the four block design for the piers, that it was common sense that the four block design would result in a studier fence, but that that approach had not been thought of before the accident. He agreed that everybody knew that someone might be on the outside of the fence and reach through to get a price tag and that it was foreseeable that someone might do so. He admitted that the fence was free to build

6

whether the two block or the four block design was used because the materials all came from the store's inventory and went back into inventory when the need for the fence was over and that regular employees constructed the fence as a part of their regular duties. He agreed that the fence needed to be sturdy because so many people would be near it and that this slipped through the cracks.

However, Mr. Vassar stated that Plaintiff leaned on the fence and that she could have easily walked around to the opening in the fence. He testified that the fence was not meant to be leaned on and that it was stable for its intended purpose of delineating the Christmas tree lot. He stated that it was easily seen by shoppers.

Dennis Stine, Stine's Chief Executive, testified that he is the safety coordinator for the stores. He stated that the employees are responsible for looking for unsafe conditions and that the rule is if you see it, you fix it. He testified that each store holds monthly safety meetings. According to Mr. Stine, the cinderblocks are for protection around the Christmas tree lot, to keep people from walking out into the parking lot in an unsafe way. He testified that Stine obtained the design of the fence from observing the practices at other stores but that the design had not been reviewed since they began using it in the 1970s. Mr. Stine stated that it was not intended that the cinderblocks be leaned on. He admitted that there were no procedures to tell anyone to check the stability of the fence. It was Mr. Stine's testimony that Stine considered only keeping people from walking out into traffic and not the possibility that the fence might be hit and fall over. He further stated that Stine changed to the four block design after Plaintiff's accident.

Mr. Stine admitted that it would have helped the employees to have some instruction on how to put the fence together and that he didn't know how employees were instructed to build the fence. He could not say whether the possibility of a child running into the fence and knocking it down had been taken

into consideration. He admitted that the four block design would not cost more than the two block design.

Jack Madeley testified as safety expert for Defendants. He stated that the fence was designed to separate people from traffic. He opined that the fence did not contribute to the accident because Plaintiff fell into the fence, and the fence fell with her, and the fence did not pull her down. He stated that she leaned on the fence and that it should be obvious to someone in Plaintiff's position that the fence was a temporary structure not meant to be leaned on. Mr. Madeley opined that it was reasonable for Stine to use the design since they had observed it to be the customary design used by other businesses. He agreed that the four block design is less likely to tip over. He opined that inspections would not have revealed anything because the fence was not defective. He stated it as his opinion that the fence was reasonably safe for its intended purpose, had utility, and was consistent with industry custom and practice.

On cross-examination, Mr. Madeley admitted that if someone had done a bump test of the fence, it could have fallen over. He opined that it is not possible to address every possibly foreseeable hazard. He reiterated that the design was reasonably safe for its intended purpose of keeping people from walking into traffic. He indicated that the existence of a safer design did not render the design used unsafe.

After hearing the evidence the jury was instructed as follows:

> In this case the defendant is what is referred to under Louisiana law as a "merchant" and therefore owes a statutory duty to its customers to use reasonable care to keep his premises free from hazardous conditions.

> Thus, a customer has a protected interest in expecting a merchant's premises to be free of hazardous conditions that will cause her harm.

8

If you find the merchant had a hazardous condition on his premises, then he is liable for damages caused by that Hazardous condition if the plaintiff shows:

A) the hazardous condition presented an unreasonable Risk of harm to customers and that risk was foreseeable;

B) the merchant created or knew of the hazardous Condition before the plaintiff' was hurt; and

C) the merchant failed to exercise reasonable care to eliminate the hazard.

In determining whether the hazardous condition on the merchant's premises presented an unreasonable risk of harm, You must balance the likelihood of injury and the severity of those potential injuries against what the merchant must sacrifice to avoid the risk.

A premise hazard is a condition of the premises that results in an unreasonable risk of harm to customers under the circumstances. If you find plaintiff has shown that a Premise hazard existed, the burden shift's to the merchant to prove that it used reasonable care to avoid this hazard.

In determining whether the hazardous condition on the Merchant's premises presented an unreasonable risk of harm, you must balance the likelihood of injury and the severity of those potential injuries against. what the merchant must sacrifice to avoid the risk.

Under Louisiana law, a merchant is liable for failing to Take precautions against even remote risks if the costs of precautions would be relatively low.

A reviewing court may not disturb the factual findings of the trier of fact where there is no manifest error. *Rosell v. ESCO*, 549 So.2d 840 (La.1989); *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1979).

In *Arceneaux*, we set forth a two-part test for the appellate review of facts: (1) the appellate court must find from the record that there is a reasonable factual basis for the finding of the trial court; and (2) the appellate court must further determine that the record establishes the finding is not clearly wrong or manifestly erroneous. *Arceneaux*, 365 So.2d at 1333; *see also Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). If the trial court's findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse. *Sistler v. Liberty Mutual Ins. Co.*, 558 So.2d 1106, 1112 (La.1990). Consequently, when there are two permissible views of the evidence,

the fact finder's choice between them cannot be manifestly erroneous. *Stobart v. State, Through Department of Transportation and Development*, 617 So.2d 880, 883 (La.1993); *Sistler*, 558 So.2d at 1112.

*Lafayette City-Parish Consol. Gov't v. Person*, 12-307, p. 7 (La. 10/16/12), 100 So.3d 293, 297-98.

The conflicting evidence given by the experts in this matter supports the conclusion that there are two permissible views of the evidence. The jury's findings are reasonable based on the evidence adduced and is not manifestly erroneous. Therefore, we must affirm the jury's verdict.

## CONCLUSION

For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the Plaintiff-Appellant, Marie Benniefiel.

**AFFIRMED.**